United States District Court
Southern District of Texas

**ENTERED**

April 01, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DOREATHA WALKER,                    §
                                    §
    *Pro Se* Plaintiff,            §
                                    §
VS.                                 §        Civ. A. H-15-1176
                                    §
HOUSTON FEDERATION OF TEACHERS/§
AFT LOCAL 2415,                     §
                                    §
          Defendant.      §

## OPINION AND ORDER

Pending before the Court in the above referenced cause, removed from state court under 28 U.S.C. §§ 1441(a) and 1331 and alleging breach of fiduciary duties, breach of the collective bargaining agreement ("CBA")[1] between Defendant union Houston Federation of Teachers ("HFT") and *pro se* Plaintiff Doreatha Walker's ("Plaintiff's" or "Walker's") former employer, The Camelot Schools of Texas, LLC ("Camelot"),[2] and violation of "the Labor Law," is HFT's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)(instrument #3).

Walker did not contest the removal, based on the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(b) and

---

[1] Copies of the CBA are attached to the Notice of Removal, #1-1, as Exhibit A to the motion to dismiss, #3-1, and as Exhibit C to Walker's Response, #7.

[2] The Beechnut Academy is a private company that operates as an alternative school and contracts with Houston Independent School District.  #1, Notice of Removal at p. 2 n.1. Plaintiff taught at the Beechnut Academy, which is run by Camelot. HFT was the exclusive bargaining agent under the CBA for Beechnut Academy teachers, who are members of the bargaining unit.  #3 at pp.1-2.

159(a),[3] which the Fifth Circuit has ruled governs the duties owed by a labor organization to its members and preempts any claim against a labor organization for a violation of a state fiduciary duty. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)(The implied duty of fair representation [under the NLRA] requires the union "fairly to represent all of those employees, both in the collective bargaining agreement with [the employer] . . . and in its enforcement of the resulting collective bargaining agreement," and "to serve the interests of all [bargaining unit] members without hostility or discrimination toward any."); *Richardson v. United Steelworkers of America*, 864 F.2d 1162, 1165, 1166 (5th Cir. 1989)(interpreting *Vaca* as holding that the federal duty of fair representation preempts state substantive law; "The Union's right to act as plaintiffs' bargaining agent is conferred by the NLRA, and we hold that the duties corresponding to this right conferred by federal labor law are likewise defined solely by federal labor law. As a result of this complete preemption of state law, we further hold that the district court had removal jurisdiction over these actions."), *cert. denied*, 495 U.S. 946 (1990).

### Factual Allegations

After Walker, a member of HFT, was fired by Camelot on December 3, 2014, HFT represented her in a grievance contesting her termination. The grievance was unsuccessful and her

---

[3] Sections 8(b) and 9(a) of the NLRA, as amended, 29 U.S.C. § 158(b) and 159(a), authorize a union that represents the majority of the employees in a bargaining unit to acts as the exclusive agent of all the employees in collective bargaining, regardless of whether they are union members.

termination was upheld.  The CBA did not allow Walker to arbitrate or further appeal that decision because she was a probationary employee.  CBA, Ex. A, Article VI(C)("An employee who has completed probation may appeal a discharge, return to probation, or suspension without pay through the arbitration procedures contained in Article VII of the contract.  A probationary employee may [only] appeal discharge or suspension without pay through Step 2 of the grievance procedure.").

Subsequently in January 2015 Camelot notified Walker by letter that it had discovered evidence that she had failed to disclose in her application for employment by Camelot that she had been fired by two prior employers and that if Camelot had known this information, it would have had two more reasons to support her termination.  Ex. B.  Walker sought help from the union, but after not hearing from HFT, on January 30, 2015 she filed a grievance (Ex. C), contesting this notification of after-acquired evidence.  When she did not receive a response from the union, she filed a lawsuit against Camelot, which is still pending in another court.  Walker alleges in this suit that HFT breached its fiduciary duties to her when it failed to tell her before March 20, 2015, by a telephone call from its attorney, that she needed to attend a hearing that Camelot scheduled on March 23, 2015, regarding her second grievance, and therefore HFT violated "the Labor law."  Walker did not attend the grievance hearing, choosing instead to pursue her lawsuit against Camelot.  Walker filed the instant suit against union HFT in the 215th Judicial District Court

of Harris County, Texas, and served the union on April 13, 2015, and it was removed on May 4, 2015.

### Standard of Review

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a

legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5ᵗʰ Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5ᵗʰ Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5ᵗʰ Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

Dismissal under Rule 12(b)(6) is proper not only where the plaintiff fails to plead sufficient facts to support a cognizable legal theory, but also where the plaintiff fails to allege a cognizable legal theory. *Kjellvander v. Citicorp*, 156 F.R.D. 138, 140 (S.D. Tex. 1994), *citing Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 591, 594 (5th Cir. 1991); *ASARCO LLC v. Americas Min. Corp.*, 832 B.R. 49, 57 (S.D. Tex. 2007). "A complaint lacks an 'arguable basis in law' if it is based on 'an indisputedly meritless legal theory' or a violation of a legal interest that does not exist." *Ross v. State of Texas*, Civ. A. No. H-10-2008, 2011 WL 5978029, at *8 (S.D. Tex. Nov. 29, 2011).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts

often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).  *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").  Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule

12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Although courts must liberally construe the allegations of a *pro se* plaintiff under a less stringent standard than formal pleadings drafted by attorneys, and must consider all of the *pro se* plaintiff's complaint, including all affidavits, if after considering all of her attachments and documents subsequently filed she has still failed to state a claim, the Court may dismiss the complaint. *Clark v. Huntleigh Corp.*, 119 Fed. Appx. 666, 667 (5th Cir. Jan. 12, 2005); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

## Relevant Substantive Law

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), authorizes a plaintiff-employee to sue in federal district court for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." When the resolution of a state-law claim depends substantially on the meaning and interpretation of the CBA, the court treats it as a claim under section 301 of the LMRA or dismisses it as preempted by state law. *Pecha v. Padilla*, 192 F.3d 126, No. 98-20369, 1999 WL 683867, at *2 (5th Cir. Aug. 9, 1999), *citing Branson v. Greyhound Lines, Inc.*, 120 F.3d 747, 753 (5th Cir. 1997), *cert. denied*, 523 U.S. 1047 (1998). Section

-8-

301 does not preempt state-law claims that are only tangentially related to the CBA.  *Id.*

The duty of fair representation, on the other hand, arises from a separate, independent statutory duty based on the union's status as the exclusive bargaining agent under Sections 8 and 9 of the NLRA.  *In re Carter*, 618 F.2d 1003, 1104 (5th Cir. 1980).  A suit against a union for breach of the duty of fair representation is to be implied under the scheme of the NLRA because the union is empowered to be the exclusive bargaining agent of all employees in a bargaining unit even if they are not members of the unit.  *Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953); *Daigle v. Gulf State Util. Co.*, 794 F.2d 974, 977 (5th Cir. 1986); *Vaca*, 386 U.S. at 177 (When a union acts as the collective bargaining agent of its members, it is obliged to secure the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty and to avoid arbitrary conduct."); *Bass v. Int'l Bhd. of Boilermakers*, 630 F.2d 1058, 1062 (5th Cir. 1980).  When a plaintiff brings a claim for breach of the duty of fair representation without a corresponding breach of the CBA, federal jurisdiction is not grounded in section 301 of the LMRA and the claim is not preempted by that statute.  *Id.* at 1104.

In what is known as a "hybrid," the action is comprised of the two separate causes of action:  one for breach of the collective bargaining agreement ("CBA") by the employer and the other, for breach of the duty of fair representation by the plaintiff's union.  *Daigle v. Gulf State Utilities Co., Local*

-9-

*Union Number 2286*, 794 F.2d 974, 977 (5th Cir. 1986); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 410-11 (5th Cir. 1990).  The action against the employer and the action against the union are "inextricably interdependent." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 104-05 (1983). "The interdependency arises from the nature of the collective bargaining agreement:  if the CBA provides that the grievance procedure is an employee's exclusive remedy, the employee must demonstrate that his union breached its duty of fair representation in order to maintain a section 301 claim against his employer. *Daigle v. Gulf State Util. Co.*, 704 F.2d 974, 977 (5th Cir. 1986).

Generally if the CBA "provides a final, binding procedure to resolve disputes relating to the CBA, the plaintiff is bound by the terms of the CBA and must exhaust the exclusive remedies it provides before he can sue his employer under § 301. *Id.; Vaca v. Sipes*, 386 U.S. 171, 184, 186 (1967).[4] He is also bound by the grievance procedure's final decision unless he proves that the union breached its duty of fair representation to him. *Id*. A failure to exhaust may be excused if "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's

---

[4] In contrast, should the CBA not provide that the grievance procedure is the exclusive and final remedy for breach of contract claims, the employee may sue his employer in federal court under § 301. *Daigle*, 704 F.2d at  , *citing Vaca*, 386 U.S. at

wrongful refusal to process the grievance." *Vaca*, 386 U.S. at 185. "'[T]he indispensable predicate for a § 301 action in this situation is a fair representation claim against the union.'" *Id., quoting Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 977 (5th Cir. 2004). If the union did not breach its duty, the court does not have to consider whether the employer breached the CBA. *Id.* "The employee may, if he chooses, sue one defendant and not the other, but the case he must prove is the same whether he sues one, the other, or both." *DelCostello*, 464 U.S. at 166.

In the instant action Walker sues only the union, HFT, but as noted, has sued Camelot in another suit.

To prevail on a claim for breach of the duty of fair representation, the plaintiff employee must demonstrate that the union's conduct "'was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process.'" *Id., quoting Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989). "'Under this test, a union may not arbitrarily ignore a meritorious grievance or process it in [a] perfunctory fashion.'" *Id., citing id.* "'[T]he duty of fair representation imposes an obligation for a union to investigate a grievance in good faith'" and "'prosecute a grievance with reasonable diligence unless it decided in good faith that the grievance lacked merit or for some other reason should not be pursued.'" *Id., citing id.* A union's acts can be characterized as arbitrary, discriminatory or in bad faith if "'in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide

range of reasonableness as to be irrational.'"  *Id*. at 501-02,
*quoting Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67
(1991).  A union does not breach its duty of fair representation
by mere negligence or a mistake of judgment; the key issue is
"whether a union's conduct was arbitrary, discriminatory, or in
bad faith, so that it undermined the fairness or integrity of the
grievance process." *Landry v. The Cooper/T. Smith Stevedoring
Co.*, 880 F.2d 846, 852 (5th Cir. 1989), *cited for that proposition
in Jaubert v. Ohmstede, Ltd.*, 574 Fed. Appx. 498, 501 (5th Cir.
July 3, 2014).  The substantive review of the union's conduct must
be "highly deferential," giving it "'certain latitude in resolving
how the investigation and processing of a grievance is to be
conducted" and providing "'room to make discretionary decisions
and choices, even if those judgments are ultimately wrong.'"
*Jaubert*, 574 Fed. Appx. at 502, *quoting Hart v. Nat'l Homes Corp.*,
668 F.2d 791, 794 (5th Cir. 1982), and *Marquez v. Screen Actors
Guild, Inc.*, 525 U.S. 33, 45-46 (1998).

     State-law claims for unfair labor practices are
preempted by the NLRA, which grants exclusive jurisdiction over
these claims to the National Labor Relations Board. *Vaca*, 380
U.S. at 178-79; *Richardson v. United Steelworkers of America*, 864
F.2d 1162, 1165-66 (5th Cir. 1989)("The Union's right to act as
plaintiffs' bargaining agent is conferred by the NLRA and we hold
that the duties corresponding to this right conferred by federal
labor law are likewise defined solely by federal labor law. As a
result of this complete preemption of state law, we further hold

that the district court had removal jurisdiction over these actions.").

Where no federal statute of limitations is expressly applicable to a suit, Congress usually intended the courts to apply the most closely analogous statue of limitations under state law unless it frustrates or interferes with the implementation of national policies. *DelCostello*, 462 U.S. at 158-61. Nevertheless, "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make a rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." *Id.* at 172. The Supreme Court has held that the six-month limitations period of section 10(b) of the NLRA, 29 U.S.C. § 160(b), applies to a duty of fair representation case because the claim is for an unfair labor practice, which requires a balance between national interests in stable bargaining relationships and the employee's interest in setting aside the "final and binding" determination of a grievance process through a method established by the CBA because there is no close analogy in ordinary state law. *Id.* at 169.

### HFT's Motion to Dismiss (#3)

As noted, the duties that a labor union owes to its members are governed by the NLRA and any claim that the labor organization breached a state law fiduciary duty is preempted by that statute.

HFT argues that despite Walker's characterization of her claim against HFT as a state law cause of action, Walker's breach-of-fiduciary-duties claim under state law against the union is preempted by the NLRA under the Supreme Court's ruling in *Vaca* and the Fifth Circuit's holding in *Richardson. See also Bass v. Int'l Bhd. of Boilermakers*, 630 F.2d 1058, 1062 (5th Cir. 1980). The duty allegedly breached by HFT arises from its role as Walker's collective bargaining representative, and thus her first cause of action is properly designated as a duty-of-fair-representation claim, not as a breach of fiduciary duty. *Richardson*, 864 F.2d at 1167. Moreover, properly pleaded as a duty-of-fair-representation claim, it supersedes her vaguely pleaded third claim ("violation of Labor law), as explained below.

Walker's second claim, "breach of the CBA," against HFT is not legally cognizable. It is black letter law that when a plaintiff alleges that an adverse action was taken against her by her employer and that her union failed to represent her in challenging it, the only breach-of-contract claim she has is against the employer, and **the only claim she has against the union is a duty-of-fair-representation.** *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983); *Hines v. Anchor Motor Freight Co.*, 424 U.S. 554 (1976); *Vaca*, 386 U.S. 171; and *Farr v. H.K. Porter Co.*, 727 F.2d 502, 505-06 (5th Cir. 1984).

Walker's third claim against the union for violation of "the Labor Law," must be a claim for a breach of its duty of fair representation, implied by the NLRA. It is the only legally cognizable claim she can assert against the union, and it

supersedes or moots her first and second claims. Nevertheless, HFT argues that the claim fails as a matter of law because it is not supported by Walker's factual allegations.

HFT asserts four reasons why the fourth claim, properly for HFT's breach of its duty of fair representation, must be dismissed: (1) it only alleges negligence by HFT; (2) all the actions of which she complains happened after she was fired and after she lost a grievance challenging her firing; (3) Walker does not allege that Camelot, her employer, violated the CBA in its post-termination actions toward her; and (4) Walker concedes that she was able to file the grievance on her own, without the union's help.

Regarding the first reason, HFT points out that Walker's complaint that HFT failed to notify her of the hearing date until March 20, 2015, just a few days before it was scheduled, does not allege that the delay was intentional, discriminatory or in bad faith.  Thus at most it is an allegation that HFT was negligent. *See Landry*, 880 F.2d at 852 (A union does not breach its duty of fair representation by mere negligence or a mistake of judgment; the key issue is "whether a union's conduct was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process.").  Thus the facts in Walker's Petition are insufficient to impose liability on HFT.

Second, regarding Camelot's notification that it discovered after-acquired evidence that would have added support to its termination of her if known at the time, HFT makes two points.  First, the CBA provides that Camelot can only discipline

"employees."   Ex. A, Article VI. The "notification" was not "discipline" that could be challenged through the grievance procedure because Walker was then no longer an employee because her grievance of her termination had failed.   Moreover, the CBA states that "discipline" refers to actions like warnings, directives, reprimands, suspensions, returns to probation, and discharges (Ex. A, Article VI), but nowhere is notification of the reasons for disciplinary action previously taken, and already upheld, as is the case here, included under the term.   The duty of fair representation only requires unions to investigate and prosecute grievances under their CBAs in good faith.   The CBA at issue does not require HFT to provide for any grievance under the facts alleged by Walker.   Therefore HFT could not have breached its duty of fair representation.

       The second point about the notification is that because she had already been terminated, Walker could not have been reinstated as a result of a hearing that she complains she received late notification of and that she chose not to attend. The most she could have achieved at the hearing would have been a ruling that the after-acquired evidence did not provide just cause for her termination.   Because her discharge had already been upheld as independently supported by just cause, the desired second hearing ruling would have not had any effect on her employment status with Camelot.   Thus HFT's delayed notification would not have injured Plaintiff and her claim for violation of the duty of fair representation fails as a matter of law.

-16-

To the third reason, i.e., that Walker does not allege that Camelot, her employer, violated the CBA in its post-termination actions toward her, HFT adds that nor could she. The CBA governs the relationship among Camelot, Camelot's employees, and HFT. Since Plaintiff was discharged, and the discharge had been finally upheld before the notification of the after-acquired evidence, the CBA did not apply to Camelot's notification. So even if the notification did breach the CBA, the allegation is meritless, because when the underlying contractual claim against the former employer lacks merit, as HFT has just shown is the case here, the plaintiff cannot complain that the union breached its duty of fair representation in failing to process her grievance.

Finally, Walker admits that she filed her own grievance and that it caused Camelot to move forward with the grievance process and schedule a hearing. HFT contends that it is black letter law that a union's duty of fair representation does not cover claims that an individual is able to bring without the union's assistance.[5]

### Walker's Response (#7) and HFT's Reply (#8)

Because HFT's Reply undermines each of Walker's arguments the Court addresses them together.

The Court first reviews Walker's procedural contentions. Complaining that HFT removed this case to federal court on May 4, 2015 without filing an answer or responsive pleading, Walker filed

---

[5] HTF cites *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170 (5th Cir. 1989), but the Court finds that this case does not stand for this proposition.

a motion for default and entry on May 22, 2015.[6]  On that same date she received paperwork that included a motion to dismiss, but without notice of a hearing on the motion nor the exhibits that were referenced in the motion.  She states that even though HFT proffered a USPS tracking paper that stated the motion was placed in the mail on May 11, 2015 at 10:03 p.m., after the court's closing time, she insists she was not served with the motion.  She was also not given time to confer with attorneys to oppose the motion. She further objects that she has not had an opportunity to conduct discovery.

HFT correctly states that Walker's arguments are not supported by the law.  Under Federal Rule of Civil Procedure 5(b)(2)(C), a party may serve documents by mail by sending them to the party's last known address through the U.S. Postal Service, with service deemed complete upon the mailing.  It followed thee steps and completed service on Walker on May 11, 2015, as evidenced by the Certificate of Service to HFT's motion and Exhibit 2 to Walker's response.  Even though Walker complains that she did not receive a copy of the motion, HFT's counsel sent her a courtesy copy.  When Walker complained she did not receive the exhibits, HFT's counsel sent her a copy of the exhibits even though she already had copies of them.  Her complaint that she had to respond in a hurry, HFT points out that she filed her response on May 26, 2015, even though it was not due until June 2, 2015

---

[6] The motion for default was denied by the  undersigned judge because HFT had filed a timely motion to dismiss on May 11, 2015 and therefore defended against Plaintiff's Petition (#13).

under Local Rules.  Moreover she did not request an extension of
the deadline to file a response.  Although Federal Rule of Civil
Procedure 6(d) presumes a document is received within three days
after it is mailed, it also provides a method under Rule 6(b) to
extend the time period.  Walker did not make such a request and
is not entitled to any relief from the purported delivery delay.

        Walker's complaint that HFT did not send her notice of
hearing is meritless because the Court decides if it wants a
hearing on a motion and the clerk sends notice of one if so
ordered.  Local Rules 7.5 and 7.8.  Her objection that she was not
given time to confer with attorneys is irrelevant because Rule
12(b) motions are exempt from the conference requirement under
Local Rule 7.1(d).  Her complaint that HFT filed the motion on the
last day allowed fails because that filing is still timely since
it was filed within the time period.  Walker's objections that she
did not have an opportunity for discovery and that the motion did
not include any affidavits ignore the fact that motions to dismiss
are decided on the basis of the pleadings and any documents
referenced in the complaint and central to the claims.

        As for the substantive argument made by Walker that
HFT's delay in notifying her of the after-acquired-evidence
grievance hearing breached its duty of fair representation, Walker
admits that she was fully and fairly represented in the grievance
of her termination, that she was able to file her own grievance of
the late notification of the after-acquired evidence, and that her
grievance was processed by Camelot.  Contrary to her claim that
she was not represented with regard to this grievance, Exhibit 3

-19-

to her response shows that HFT hired a lawyer for her to represent her interest in both grievances.  Exhibit 3 also demonstrates that she refused to attend the second hearing and that she also refused Camelot's offer to reschedule the hearing to a later date to give her more time to prepare.

Walker's conclusory allegation that she has a burgeoning "belief" that HFT's purported delay in notifying her about the hearing was intentional and in conspiracy with Camelot is insufficient to show it was not due to negligence, and "mere conclusory allegations or legal conclusions masquerading as a factual conclusions" cannot adequately support her argument and will not prevent dismissal.  *Beavers v. Metr. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2007).  Walker had not pleaded even one fact supporting here claim that the delay was intentional and part of a conspiracy with Camelot.

Nor do her factual allegations support the existence of a duty of fair representation imposed on HFT because the notification was not grievable under the terms of the CBA.  Even if HFT had such a duty with regard to the second grievance, Walker has not alleged that she suffered any harm, so her claim would still fail as a matter of law.  Furthermore Plaintiff concedes that even if she had attended the hearing and prevailed, she would not have been put back to work because she already lost a grievance challenging her termination.  Plaintiff's Response at 8 and Exhibit 3.

Walker now argues that the after-acquired-evidence notification violated the CBA because it contained "fabrications"

and because the related 48-hour meeting notice did not state the purpose of the meeting.  Notice requirements under the CBA relate only to disciplinary conferences and thus did not apply to Camelot's meeting notice. Regardless, Plaintiff's Exhibit 7 shows that Camelot stated in the notice that the purpose of the meeting was to "discuss information that [Plaintiff] provided on [her] application for employment and [her] employment status."

More significant, and as an additional and independent ground for dismiss of Walker's suit, Walker has never alleged in her complaint or in her response to the motion to dismiss that Camelot's termination of her employment violated the CBA.  Without such a claim, there can be no breach-of-duty-of-fair representation claim. *Conn v. GATX Terminals Corp.*, 18 F.3d 417, 420 (7th Cir. 1994)("Because the claims for breach of contract and duty of fair representation are intertwined, [u]nless the union violated its duty of fair representation, Conn cannot litigate his claim of breach of contract, because the union's responsibilities as the exclusive representative of the members of the bargaining unit include the responsibility for the decision whether to prosecute a grievance on the employee's behalf."); *see also White v. Gen. Motors Corp.*, 1 F.3d 593, 595 (7th Cir. 1992)("When an employee's underlying contractual claim lacks merit as a matter of law, the employee cannot complain that the union breached its duty of fair representation in failing to process his or her grievance.").

**Walker's Reply (#11)**

Reiterating her earlier arguments in her response to the motion to dismiss, Walker insists she has adequately pleaded her claims.  Her response makes clear that she does not understand the well established,  applicable law correctly cited and applied by HFT here, including the law of preemption, with the regard to the NLRA.  Moreover, the Court finds  under the facts of this case and that law, amendment of her pleadings would be futile.

**Court's Decision**

Accordingly, because the Court agrees with HFT that Walker has not and cannot state a cognizable claim, the Court

ORDERS that HFT's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a cognizable legal claim is GRANTED. Final judgment shall issue by separate document.

**SIGNED** at Houston, Texas, this  31st  day of  March ,  2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-22-